## People, for use of Meyer Abrahams, v. Henry Peck et al.

### Gen. No. 13,565.

CONSTABLE—*when not liable upon official bond.* A constable who releases a levy, receiving money to cover the amount of the execution, and, who makes an agreement that such money is held subject to the disposition of the "matter" according to law, is not liable to return such money to the defendant in the execution, after an appeal has been taken which is not prosecuted with effect.

Action commenced before justice of the peace. Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed January 13, 1908.

B. M. SHAFFNER, for appellant.

BLUM & BLUM, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of *nil capiat* and for costs against the plaintiff by the Circuit Court in an action originally brought by the appellant against the appellees before a justice of the peace, from whom it was removed by appeal to the Circuit Court and submitted to the court without a jury, resulting in the judgment above noted.

The facts are these: One Bernstein and one Wolf, doing business as A. Bernstein & Co., on March 7, 1904, recovered judgment against one D. Izen for $146 and some costs, before Justice Sabath, and on the same day an execution was issued on that judgment by the justice and placed for service in the hands of Henry Peck, a constable in and for Cook county. The judgment was in an action of replevin where the goods were not found, and on being demanded were not turned over to the officer.

The execution given to Peck was immediately taken

by him to the store of Mr. Izen, who was a dealer in second-hand furniture.

The testimony of Peck and Jacob Bernstein as most favorable to the defendant, for whom the Circuit Court rendered the judgment which is attacked, must be taken as controlling by us if there be any conflict between it and the testimony of the witnesses for the plaintiff as to what took place there. Peck's testimony is that he found at the store Mrs. Izen and two children; that a young lady appeared from above, and claimed that the goods in the store belonged to her father, Meyer Abrahams; that shortly afterward Mr. Izen came in; that the constable Peck then made a levy, taking an inventory of certain chattels that he selected to levy on, and indorsing it on the execution, of which he gave a copy to Izen. The property so specified was a quantity of furniture. Then the constable, who had taken a man along to act as custodian, prepared some written authority for the custodian to act under. At this point Meyer Abrahams came in and asserted his ownership, saying, "You can't take anything in this place. Everything is mine. This is my house and I am the owner of the store. Mr. Izen is only running it." Peck refused to take any notice of this claim. Abrahams suggested that Izen was going to appeal the case, but Peck answered, "I don't know what he is going to do. I am here to make a levy—either take the goods out or leave the custodian all night." Then Abrahams suggested that he would furnish the money. Peck said, "That is all I want." Abrahams said, "How much is it?" Peck replied, "In the neighborhood of $160 with costs."

Abrahams asked Peck if he would return the money if the case was appealed. Peck replied, "I don't know anything about that. I cannot release the levy as a constable, but I shall go over to the plaintiff and state the matter to him."

Then, according to Peck, he did go to Bernstein, senior, leaving his custodian in the store. Receiving

authority to release the levy on the payment of money, he went to the place of business of Meyer Abrahams' son, near by, where Meyer Abrahams was waiting for him, he having left Izen's store with Peck. To Meyer Abrahams, Peck said: "The only thing I can do is, if you pay the money I will give you a receipt. If Mr. Izen will settle up the judgment or anybody else, you will probably get your money back. But ` this thing has got to be settled according to law." Mr. Abrahams gave Peck $160, and received from Peck this receipt:

"CHICAGO, March 7, 1904.

Received from Meyer Abrahams one hundred and sixty dollars, to be as security in the execution of A. Bernstein & Company v. D. Izen, same amount to be returned to the above if said Izen or his agents settle the within mentioned execution or otherwise dispose of the matter according to law.

Witness, E. ABRAHAMS.

HENRY PECK."

The next day Constable Peck turned the execution, with the following return on it, into Justice Sabath, with the $160, and has since not seen the money or any part of it.

"By virtue of the within, I have this day levied on the following personal property of the within named defendant: 6 Springs; 5 Couches; 2 Ice Boxes; 15 Beds; 2 Cupboards; Couch; 5 Stoves; 14 Beds; 2 Sideboards; 28 Chairs; 5 Parlor Suits; lot of Oil Cloth; 4 dozen Tables; 1 Couch. By direction of plaintiff I have taken from Meyer Abrahams $160.00 to be as security and released said levy and I have paid said money in Court this 8th day of March, 1904.

HENRY PECK,
Constable."

On the twenty-eighth day of March, 1904, Izen appealed the case in which the execution had been issued, to the Circuit Court, and an appeal bond was filed in the Circuit Court by him, with one Levi Lerman as surety. The appeal was dismissed by the Cir-

cuit Court December 21, 1904, the appellant's counsel says because "the bondsman had sold his property;" the appellee's counsel says because "of a failure by appellant to comply with a rule to file a good bond." We may accept the latter statement as accurate in any event, as that is the only way in which the result could have followed the fact asserted in the former one. Otherwise than by the constable's receiving the $160 above set forth, the plaintiff in the execution has never received anything on the judgment.

After the appeal was taken Meyer Abrahams demanded his money back from Peck and Justice Sabath. He did not get it, and brought the present suit in the name of the The People (for his use) against Peck and the sureties on his official bond, who were Barbara Sabath and Max Skudera. Skudera was never served and never appeared either before the justice or in the Circuit Court.

The justice before whom the suit was originally brought entered judgment against Henry Peck and Barbara Sabath for $160 and costs. After the appeal to the Circuit Court the appeal was once dismissed for want of prosecution (December 5, 1904). This judgment of dismissal against the appellant was reversed on error by the Branch Appellate Court February 20, 1906, and the cause was redocketed in the Circuit Court, where it was tried with the result first above indicated.

From that judgment this appeal has been taken to this court and various assignments of error made.

We think the foregoing statement shows clearly that there is no foundation for any action on the constable's bond. The constable has done nothing to render his sureties liable. The receipt given shows what the agreement was. The money was to remain as security for the execution debt. If the execution were paid, or if "the matter"—that is, evidently, the alleged indebtedness—should be otherwise "disposed of according to law," the money was to be returned;

otherwise not. The constable took the money and made this agreement at the instance of Abrahams himself. He turned the money into court. Here was no shadow of a violation of his official duty rendering his bondsmen liable. But we cannot see that he is even personally liable. The money was security for the settlement of the execution or the disposition "of the matter" according to law. If, as we think, "the matter" was the alleged indebtedness for which execution had issued, it was no "disposition" of it "according to law," to merely take an appeal and file a bond which proved insufficient and allow the appeal to be dismissed for failure to file a sufficient one.

The judgment of the Circuit Court is affirmed.

*Affirmed.*